Denisse O. Gastélum, SBN 282771
Selene Estrada-Villela, SBN 354994
**GASTÉLUM LAW, APC**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com
sestradavillela@gastelumfirm.com

Christian Contreras, SBN 330269
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000
Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Attorneys for Plaintiffs,
ESTATE OF JOHN GRIGORIAN, by and through successor in interest, BLAKE GRIGORIAN; BLAKE GRIGORIAN, individually

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ESTATE OF JOHN GRIGORIAN, by and through successor in interest, BLAKE GRIGORIAN; BLAKE GRIGORIAN, individually<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, a public entity; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; SHERIFF ROBERT G. LUNA, in his individual and official capacities; MOREES VALDEZ, an individual, and DOES 1 through 10, individually, jointly and severally,<br><br>Defendants. | **CASE NO.  2:25-cv-3301**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>2. Failure to Provide Medical and Mental Health Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);<br>4. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983);<br>5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983);<br>6. Negligence – Wrongful Death;<br>7. Negligence – Medical Malpractice;<br>8. Violation of California Government Code §845.6;<br>9. Violation of California Civil Code §52.1 (Tom Bane Act);<br>10. Violation of 42 U.S.C §12101 et seq.(ADA);<br>11. Violation of 29 U.S.C §794(a)(Rehabilitation Act)<br><br>**DEMAND FOR JURY TRIAL** |

1

## COMPLAINT FOR DAMAGES

**COME NOW** Plaintiffs ESTATE OF JOHN GRIGORIAN, by and through successor in interest, BLAKE GRIGORIAN; BLAKE GRIGORIAN, individually and allege as follows:

### I.

### INTRODUCTION

1. This civil rights action seeks to establish the true and unequivocal facts surrounding the brutal and violent attack of John Grigorian on or about February 25, 2024, and to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2. This civil rights action also seeks to establish the violations of fundamental rights under the United States Constitution, leading to the attack of John Grigorian on or about February 25, 2024—an attack that ultimately resulted in his cruel death on March 1, 2024.

3. At the time of the attack, John Grigorian was a fifty-nine-year-old, who suffered from mental health issues, leaving him vulnerable to violent inmate. On or about February 25, 2024, John Grigorian was brutally attacked by another inmate, Morees Valdez, in the same housing module at the Los Angeles County Sheriff's Department, Twin Towers Correctional Facility. Morees Valdez was known by the individual defendants to be aggressive and violent based on his violent history. Morees Valdez was a known violent predator who preyed on the weak and the most vulnerable. Because of these traits, his mental/medical condition, and his tendency toward violence, each



defendant herein knew, or should have known, that Morees Valdez posed an imminent threat of violence and harm to all other inmates in his immediate vicinity.

4.      Long before the attack of John Grigorian, each of the individually named defendants from the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter "LASD") and COUNTY OF LOS ANGELES (hereinafter "COUNTY") knew that there existed a great indifference to the safety and protection of inmates, particularly mentally ill and vulnerable inmates at Twin Towers Correctional Facility. This indifference consisted of a total disregard by the custodial staff and mental health staff for mentally ill, vulnerable inmates who were susceptible to being preyed upon by violent predatory inmates.

5.      Despite this long history of inmate-on-inmate violence, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent predatory behavior among inmates.

6.      Therefore, by the time John Grigorian was taken into custody and housed at Twin Towers Correctional Facility, violent inmates knew that they could continue to prey on the most vulnerable with no interference on the part of the custodial staff or the mental health staff.

7.      Accordingly, this civil rights action seeks to vindicate John Grigorian's violent death and egregious violation of his constitutional rights, as well as bring justice for the deprivation of Plaintiffs' beloved father, John Grigorian.

## II.

## JURISDICTION AND VENUE

8.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

COMPLAINT FOR DAMAGES

9.     This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

10.     Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

### III.

### PENDANT CLAIMS

11.     Plaintiffs presented their government claims on August 26, 2024. Defendant COUNTY rejected Plaintiffs' claim on October 15, 2024. Plaintiffs bring this action within six months of the tort claim rejection. Accordingly, Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

12.     With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

### IV.

### PARTIES

**A. Plaintiffs**

13.     Decedent John Grigorian was fifty-nine (59) years old when he passed away on March 1, 2024. He was the father of Blake Grigorian. At the time of his death, he was a pretrial detainee who resided in the County of Los Angeles, California. The claims made by Plaintiff ESTATE OF JOHN GRIGORIAN, are brought by the successor in interest, Blake Grigorian.

14.     Plaintiff BLAKE GRIGORIAN, is and was, at all times relevant hereto, the natural son of decedent John Grigorian, and at all times relevant hereto was a resident of the County of Riverside, California. Plaintiff brings these claims pursuant

**COMPLAINT FOR DAMAGES**

to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of decedent John Grigorian on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only his rights, but others' civil rights of great importance.

**B. Defendants**

15. Defendant COUNTY OF LOS ANGELES (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter also "LASD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including LASD employees, complied with the laws and the Constitutions of the United States and of the State of California. Defendant COUNTY, through LASD, is and was responsible for ensuring the protection and safety of all persons incarcerated at the LASD correctional facilities, including the Twin Towers Correctional Facility (hereinafter "TTCF"), Men's Central Jail (hereinafter "MCJ"), Century Regional Detention Facility (hereinafter "CRDF"), Inmate Reception Center (hereinafter "IRC") and the Pitchess Detention Facilities (hereinafter collectively "COUNTY Jails").

16. Defendant ROBERT G. LUNA ("SHERIFF LUNA"), at all times mentioned herein, was the Sheriff of the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter also "LASD"), the highest position in the COUNTY Jails. As Sheriff, Defendant LUNA is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant LUNA is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of

**COMPLAINT FOR DAMAGES**

the inmates housed therein. Defendant LUNA also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant LUNA is being sued in his individual and official capacities.

17. Defendant MOREES VALDEZ at all relevant times was an inmate of Twin Towers Correctional Facility and the individual who physically killed John Grigorian.

18. Defendants COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, and SHERIFF LUNA will hereinafter be referred to as the COUNTY DEFENDANTS.

19. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

20. The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the LASD, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1 through10 were and still are residents of the County of Los Angeles, California. DOES 1 through 10 are sued in both their individual and official capacities.

6

**COMPLAINT FOR DAMAGES**

21.    At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY. They had supervisorial authority over DOES 1-10, and the COUNTY employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

22.    At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the LASD and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the LASD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

23.    Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

24.    Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the

**COMPLAINT FOR DAMAGES**

things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent John Grigorian's constitutional rights and other harm.

25.    Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

26.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

27.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

**V.**

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

28.    On or about January 5, 2024, John Grigorian was arrested and booked into the Los Angeles County Sheriff's Department, Twin Towers Correctional Facility (hereinafter "TTCF"), located at 441 Bauchet St., Los Angeles, CA 90012.

29.    At the TTCF, John Grigorian was housed in Tower 1, 3rd Floor, Module 131 A-Pod. Upon information and belief, Module 131 is a high observation unit. As required by LASD Policy 4-11/030.00 Inmate Safety Checks and Title 15, deputies must conduct Title 15 welfare and safety checks every fifteen (15) minutes.

30.    On or about February 25, 2024, John Grigorian was brutally attacked and beaten by another inmate, Morees Valdez, while housed at TTCF. This attack caused John Grigorian to go into cardiac arrest and suffer multiple severe injuries

COMPLAINT FOR DAMAGES

including a skull fracture, a traumatic cerebral edema, a traumatic brain compression, and multiple cranial hemorrhages, among other injuries.

31. Following the attack, John Grigorian was hospitalized for several days at the LAC+USC Medical Center but ultimately succumbed to his injuries and died on March 1, 2024.

32. Upon information and belief, LASD deputies and/or custody staff were well aware of John Grigorian's mental health conditions which could have led to a violent situation with another inmate. Despite this knowledge, LASD personnel failed to take adequate precautions to protect John Grigorian.

33. Furthermore, upon information and belief, LASD deputies and/or custody staff were aware of the propensity for the danger posed by inmate, Morees Valdez, and failed to properly classify Morees Valdez.

34. Upon information and belief, LASD deputies and mental health staff were aware of Morees Valdez's violent history, tendencies, and propensities for violence based on their interviews and evaluations of Morees Valdez and review of his medical and penal records. LASD deputies and mental health staff knew or should have known that Morees Valdez would attack or otherwise and/or kill other inmates if Morees Valdez was not consistently monitored.

35. Nevertheless, LASD deputies and/or custody staff intentionally and improperly housed John Grigorian with this dangerous individual, thereby placing him at substantial risk of death or serious harm.

36. By housing John Grigorian with a dangerous individual, despite John Grigorian being in custody for a non-violent offense, LASD personnel showed a deliberate indifference to his safety. This indifference ultimately led to John Grigorian being brutally killed by Morees Valdez.

37. Moreover, it was foreseeably dangerous to house John Grigorian with Morees Valdez, an inmate with a violent history, because there was a high probability, based on John Grigorian's mental health history, that a fight could break

**COMPLAINT FOR DAMAGES**

out, which carried a high probability of resulting in the murder of John Grigorian given Morees Valdez's violent history.

38. Long before the attack on John Grigorian, LASD personnel were aware that at the TTCF, there existed a great indifference to the safety and protection of inmates, particularly vulnerable inmates such as John Grigorian. This indifference was characterized by a total disregard for the well-being of inmates who were susceptible to being preyed upon by violent, predatory inmates.

39. Despite a long history of inmate-on-inmate violence, LASD personnel deliberately failed to take even modest actions to prevent predatory behavior among inmates. As a result, by the time John Grigorian was taken into custody and housed at TTCF, violent inmates knew they could continue to prey on the most vulnerable without interference from custodial staff or medical/mental health staff.

40. Defendants placed John Grigorian in a position of vulnerability and danger from Morees Valdez, because Defendants were on notice of Morees Valdez's propensity for violence that foreseeably manifested when Morees Valdez violently attacked John Grigorian. Defendants failed to take any reasonable steps to mitigate the obvious and well-known risk of harm, including this inmate-on-inmate violence, to John Grigorian, that was attendant to housing John Grigorian with an inmate like Morees Valdez.

41. Furthermore, upon information and belief, due to the COUNTY Jails patterns and practices of not conducting proper and timely Title 15 welfare and safety checks, John Grigorian's dire need for emergency intervention went unnoticed by the TTCF staff and deputies, who were responsible for monitoring and ensuring the welfare of all inmates, including John Grigorian.

42. Defendants also knew that deputies routinely failed to conduct required Title 15 welfare and safety checks in TTCF and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

**COMPLAINT FOR DAMAGES**

43. Upon information and belief, Defendants DOES 1 through 10, including the custodial and mental health staff of LASD's correctional facility TTCF, failure to conduct the required safety check of Decedent John Grigorian's housing unit on the date of the violent attack evidences deliberate indifference to the risk of harm to John Grigorian.

44. By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide John Grigorian with safety and proper housing, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide proper Title 15 welfare and safety checks, along with emergency medical care and life-saving care to persons in their custody, constituted deliberate indifference to John Grigorian's serious medical needs, health, and safety.

45. DOES 1 through 10, which included custodial and mental health staff of TTCF, acted with deliberate indifference, and reckless disregard to the safety, security, protection and constitutional and statutory rights of Decedent and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practices of, among other things.

    a. Selecting, retaining and assigning deputies to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates who exhibit vulnerabilities due to medical, mental health, and disabilities;

    b. Subjecting persons in their jails to violence perpetrated by other detainees, arrestees or inmates;

    c. Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following: separation of detainees and arrestees from potentially violent or dangerous inmates; use of security cameras to monitor violence

**COMPLAINT FOR DAMAGES**

within jail cells; training deputies to monitor detainees and inmates and immediately respond to acts of violence or threats of violence; monitoring drunken detainees who are unable to care for themselves.

d. Failing to adequately train, supervise, and control deputies in the arts of law enforcement;

e. Failing to adequately discipline deputies involved in misconduct; and

f. Condoning and encouraging deputies in the belief that they can violate the rights of persons such as the Plaintiffs in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

46. Defendant DOES 1 through 10, which included custodial and mental health staff of TTCF acted with deliberate indifference and reckless disregard toward John Grigorian's right to be protected and safe while housed at the TTCF, and afforded due process of law, by among other things, the following acts:

a. Placing John Grigorian, a vulnerable detainee with mental health concerns, in a housing unit with an inmate and/or arrestees whom Defendants knew or should have known had propensities for aggressive acts or acts of violence and mental instabilities, and not watching and protecting him;

b. Failing to properly classify and house Morees Valdez as a violent inmate or otherwise house and classify Morees Valdez in appropriate housing where he could be constantly monitored and/or isolated from other inmates;

c. Placing John Grigorian, a vulnerable detainee with mental health concerns, in a cell with other detainees, arrestees and inmates under circumstances that were conducive to the eruption of violence, including in a unit with violent and dangerous inmates like Morees Valdez

12

**COMPLAINT FOR DAMAGES**

    d. Causing John Grigorian, to remain in a housing unit with another inmate after Defendants knew that physical violence was imminent; and

    e. Not observing or protecting John Grigorian, or otherwise standing by and allowing a brutal beating on John Grigorian by another inmate to continue for an unreasonable period of time, resulting in unnecessary and severe injury to John Grigorian that eventually caused his death on March 1, 2024.

47. Plaintiffs are informed and believe that Defendants DOES 1 through 10 were aware of the threat Morees Valdez represented to John Grigorian, based on the inmate's criminal history or exhibited violent tendencies of which the deputies and other employees knew or should have known. Said defendants intentionally, recklessly and with deliberate indifference, failed to take any security measures to protect detainees and arrestees of minor offenses who were unable to defend themselves, such as John Grigorian, who was unable to care for himself or others from inmates with violent tendencies like Morees Valdez.

48. Plaintiffs are informed and believe and thereupon allege, that defendants COUNTY and LASD ordered, authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the preceding paragraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, or reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiffs.

49. Plaintiffs are informed and believe and thereupon allege that the brutal beating on John Grigorian was conducted with the approval of LASD deputies or because of the deliberate indifference or reckless disregard of Deputy Defendants, and DOES 1 through 10 to the safety and security of John Grigorian.

50. Plaintiffs are informed and believe and thereupon allege that the Deputy Defendants and DOES 1 through 10 recklessly and with deliberate indifference,

**COMPLAINT FOR DAMAGES**

failed to immediately and appropriately respond to the brutal attack and allowed the attack to continue for an extended period of time, causing John Grigorian to suffer numerous and severe injuries, resulting in his death.

51.    Plaintiffs are informed and believe that LASD deputies, intentionally, recklessly and with deliberate indifference, failed to take immediate action to summon medical care for John Grigorian, despite knowing he was in need of immediate medical care.

52.    Defendants have been on notice for years that their provision of medical and mental health treatment to inmates is inadequate and results in needless harm and death.

53.    Welfare and safety checks by custody and mental health staff, when done correctly, are an important part of protecting inmates in the LASD jails from harm, including inmate on inmate violence. Defendants knew that health and welfare checks conducted in units were part of violence prevention programs and that such checks were necessary for inmate-on-inmate attack prevention.

54.    Prior to the attack of John Grigorian, Defendants were aware that there was a problem with custody staff failing to actually perform required welfare and safety checks in the units at LASD jails, failing to perform adequate welfare and safety checks and/or failing to take adequate measures after observing violent during the welfare and safety checks.

55.    Defendants actions and omissions, as herein above recited, directly placed John Grigorian at substantial risk of the grievous and tragic harm that ultimately occurred.

56.    The COUNTY OF LOS ANGELES, SHERIFF ROBERT LUNA, and the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT custodial and medical personnel assigned to its correctional facilities have a responsibility to ensure that the Los Angeles County correctional facilities are safe and that the constitutional rights of detainees such as John Grigorian are not violated. The COUNTY OF LOS

14

**COMPLAINT FOR DAMAGES**

ANGELES, the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and SHERIFF ROBERT LUNA have failed to ensure detainees do not get assaulted in their jails and have failed to protect the civil rights and constitutional rights of detainees within the County/LASD Jails. Accordingly, this claim and the subsequent lawsuit will seek judicial intervention to ensure further constitutional violations and jail assaults do not occur.

## VI.

## FIRST CAUSE OF ACTION

## Failure to Protect from Harm,

## Violation of the Fourteenth Amendment to the United States Constitution

## (Survival Action – 42 U.S.C. § 1983)

## By Plaintiff ESTATE OF JOHN GRIGORIAN As Against DOES 1 through 10

57. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

58. Pretrial detainees such as John Grigorian have a Fourteenth Amendment due process right to be free from harm. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

59. Upon information and belief, on or around January 5, 2024, when Defendants DOES 1 through 10, and each of them were processing and classifying John Grigorian, Defendants DOES 1 through 10 made the intentional decision to place John Grigorian in a condition of confinement which significantly exposed him to the risk of harm which ultimately caused John Grigorian's death.

60. Given John Grigorian's documented mental health problems, inmates such as John Grigorian are more susceptible to violence. Individuals with mental health problems are more susceptible to violence from other inmates based upon manifestations from their mental health problems. The risk to harm to inmates such as

John Grigorian are even greater when they are in confinement with other inmates who have a propensity for violence.

61. Indeed, upon information and belief, on or about February 25, 2024, Defendants DOES 1 through 10, and each of them continued to make the intentional decision to place John Grigorian in a housing unit with Morees Valdez, who had a known history of attacking other inmates and had a history of violent propensities. Indeed, Defendants DOES 1 through 10, and each of them, made the intentional decision to recklessly mix dangerous inmates with pretrial detainees such as John Grigorian.

62. Upon information and belief, foreseeably, John Grigorian was attacked by Morees Valdez on or about February 25, 2024. This attack caused John Grigorian to go into cardiac arrest, and suffer multiple severe injuries including a skull fracture, a traumatic cerebral edema, a traumatic brain compression, and multiple cranial hemorrhages, among other injuries.

63. Upon information and belief, Defendants DOES 1 through 10 knew that Morees Valdez had a propensity for violence and posed a danger to other inmates because, upon information and belief, Morees Valdez had a documented history of attacking other inmates, of which Defendants DOES 1 through 10 were aware of by reviewing incident reports related to Morees Valdez's history of violence towards other inmates and detainees.

64. Nonetheless, despite having express and actual knowledge about the deadly risks which John Grigorian faced given that he was being housed with a violent inmate, Defendants DOES 1 through 10, acted with deliberate John Grigorian in the same housing unit with Morees Valdez.

65. Defendants DOES 1 through 10, acted with deliberated indifference because they made the conscious choice of housing John Grigorian with a violent person and consciously disregarded the foreseeable consequence from such action, which was death or serious bodily injury to John Grigorian.

16

**COMPLAINT FOR DAMAGES**

66. Clearly, given that, upon information and belief, Morees Valdez had a known history of violence towards other inmates and detainees, put John Grigorian at substantial risk of suffering serious harm to which Defendants DOES 1 through 10, and each of them, did not take reasonable measures to reduce such risk even though any reasonable person would have appreciated the high risks involved in the situation, knowing of Morees Valdez's documented history of attacking other inmates and detainees.

67. In fact, Defendants DOES 1 through 10, and each of them, could have very easily placed John Grigorian housing module, or facility to reduce or abate the risks John Grigorian faced by being housed with a violent inmate like Morees Valdez.

68. By failing to take such reasonable measures, it was obvious and foreseeable that John Grigorian would get assaulted by Morees Valdez.

69. Furthermore, Defendants DOES 1 through 10, and each of them also placed John Grigorian in a condition wherein John Grigorian could face a tortious death at the hands of violent inmates. Defendants DOES 1 through 10, and each of them were aware that John Grigorian was being housed with a violent inmate with a history of attacking other inmates. Therefore, John Grigorian was in a vulnerable state and was placed in a condition where he could be harmed by Morees Valdez, including being attacked and beaten, which resulted in death.

70. Clearly, such conditions put John Grigorian at substantial risk of suffering serious harm. Despite having clear knowledge regarding the substantial risks that John Grigorian faced by being housed with Morees Valdez, Defendants DOES 1 through 10, and each of them did not take any reasonable available measures to abate or reduce the risks John Grigorian faced even though a reasonable person in the circumstances would have appreciated the high degree of risk involved.

71. Therefore, Defendants DOES 1 through 10's conduct caused the obvious consequence that John Grigorian would face death or serious bodily injury.

**COMPLAINT FOR DAMAGES**

Accordingly, by not taking such measures, Defendants DOES 1 through 10 caused John Grigorian's death.

72.     Defendants subjected John Grigorian to their wrongful conduct, depriving John Grigorian of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of John Grigorian and others would be violated by their acts and/or omissions.

73.     As a direct and proximate result of Defendants DOES 1-10' acts and/or omissions as set forth above, John Grigorian, sustained injuries and damages.

74.     The conduct of Defendants DOES 1-10 entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants LASD and COUNTY

75.     Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**VII.**

**SECOND CAUSE OF ACTION**

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF JOHN GRIGORIAN As Against DOES 1 through 10**

76.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

77.     Pretrial detainees such as John Grigorian have a Fourteenth Amendment due process right to needed medical care. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

78.     By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated John Grigorian's Fourteenth Amendment rights, by depriving Decedent John Grigorian, of the following clearly established

**COMPLAINT FOR DAMAGES**

and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution: John Grigorian's right to be free from deliberate indifference to John Grigorian's serious medical and mental health needs while in custody as a pretrial detainee as secured by the Fourteenth Amendment.

79.    By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide John Grigorian with appropriate medical care based upon John Grigorian's need for mental health treatment. John Grigorian desperately needed medical treatment because the symptoms from his mental health problems were severely manifesting such that it put him at risk. John Grigorian continued to deteriorate the longer he was in LASD custody.

80.    Worst yet, Defendants DOES 1 through 10 did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable person under the circumstances would have understood the high degree of risk involved—making the consequences of the Defendants DOES 1 through 10's conduct obvious.

81.    Clearly, given that John Grigorian's life was in danger and at risk, Defendants DOES 1 through 10, and each of them, did not take reasonable measures to reduce such risk even though any reasonable person would have appreciated the high risks involved in the situation. By failing to take such reasonable measures, it was obvious and foreseeable that John Grigorian could die from his injuries if not provided medical care for his condition. Therefore, by not taking such measures, Defendants DOES 1 through 10, and each of them, caused John Grigorian's death.

82.    As a direct and proximate result of Defendants' conduct, the civil rights of John Grigorian, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, Decedent John Grigorian experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

19

**COMPLAINT FOR DAMAGES**

83.     Defendants subjected John Grigorian to their wrongful conduct, depriving John Grigorian of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of John Grigorian and others would be violated by their acts and/or omissions.

84.     As a direct and proximate result of Defendants' conduct, the civil rights of John Grigorian, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent John Grigorian experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

85.     Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

86.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

87.     The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

88.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**VIII.**

**THIRD CAUSE OF ACTION**

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By Plaintiff BLAKE GRIGORIAN As Against DOES 1 through 10**

89.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

20

**COMPLAINT FOR DAMAGES**

90. The aforementioned acts and/or omissions of Defendants DOES 1 through 10 in being deliberately indifferent to decedent John Grigorian's protection, safety, and serious medical and mental health needs, violating decedent John Grigorian's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of John Grigorian deprived Plaintiff Blake Grigorian of his liberty interest in the parent-child relationship in violation of his substantive due process rights as defined by the Fourteenth Amendment of the Constitution.

91. All of the acts of Defendants DOES 1 through 10 and the persons involved were done under color of state law.

92. The acts and omissions of each Defendant deprived Plaintiff Blake Grigorian of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiff of her rights to a parent-child relationship with decedent John Grigorian without due process of law by their deliberate indifference in denying John Grigorian protection and safety while incarcerated at TTCF and access to medical care while suffering a medical emergency at TTCF with an inmate known for their propensity for violence towards other inmates and detainees.

93. Defendants DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of the COUNTY and LASD. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are experiencing medical emergencies access to medical care as stated above and incorporated herein.

94. In addition, the training policies of the COUNTY and LASD were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters

with individuals in pretrial custody who are experiencing medical emergencies. These Defendants and each of them knew that its failure to adequately train its COUNTY custody, medical and mental health staff, including other agents and employees, to interact with individuals suffering from medical emergencies made it highly predictable that its custody, medical and mental health staff would engage in conduct that would deprive persons such as decedent John Grigorian, and thus Plaintiff Blake Grigorian of his rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

95. Defendants COUNTY and LASD's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiff Blake Grigorian and decedent John Grigorian by each individual Defendant's official policies and/or longstanding practices or customs are so closely related to John Grigorian's injuries and death and thus the deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

96. Defendant SHERIFF LUNA, a final policymaker for the COUNTY and LASD, ratified the actions and omissions of Defendants DOES 1 through 10, all of whom were custody, medical and mental health staff at the COUNTY Jails, including TTCF, in that they had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

97. As a direct and proximate result of Defendants' conduct, the civil rights of John Grigorian, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent John Grigorian experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

98. Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and

22

**COMPLAINT FOR DAMAGES**

reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

99.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

100.   The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

101.   Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## IX.

## FOURTH CAUSE OF ACTION

**Municipal Policies, Customs, Practices Causing Constitutional Violations**

**(*Monell* - 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF JOHN GRIGORIAN As Against Defendants COUNTY OF LOS ANGELES and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**

102.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

103.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and LASD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and LASD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and LASD:

a.    Selecting, retaining and assigning deputies to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates

23

**COMPLAINT FOR DAMAGES**

who exhibit vulnerabilities due to their medical/mental health conditions, and disabilities;

b. Subjecting persons in their jails to violence perpetrated by other detainees, arrestees or inmates;

c. Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following:

    i. separation of detainees and arrestees from potentially violent or dangerous inmates;

    ii. use of security cameras to monitor violence within jail cells;

    iii. training deputies to monitor detainees and inmates and immediately respond to acts of violence or threats of violence;

d. Failing to properly classify, house, and monitor vulnerable detainees, arrestees and inmates;

e. Failing to properly classify, house, and monitor violent detainees, arrestees and inmates;

f. To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the COUNTY OF LOS ANGELES and LASD's written policies and state law;

g. Ratifying wrongful conduct by LASD custody personnel and CHC medical personnel which result in serious injuries and death to inmates in LASD custody, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct;

h. Failing to discipline, investigate and take corrective actions against LASD custody personnel and CHC medical personnel, including, but not

24

**COMPLAINT FOR DAMAGES**

limited to, showing grave deliberate indifference to the protection and safety of vulnerable inmates;

i. Employing and retaining LASD custodial and medical/mental health staff who knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating inmates and being deliberately indifference to the rights of inmates;

j. To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

k. To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the COUNTY OF LOS ANGELES's written policies and state law;

l. To allow and encourage inadequate and incompetent medical care for jail inmates and arrestees;

m. To hire, retain and contract for obviously inadequate medical care for jail inmates and arrestees, including creating financial incentives for custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

n. To allow, encourage, and require medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

o. To fail to train custody staff that medical staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

25

**COMPLAINT FOR DAMAGES**

p.    To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

q.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

r.    To cover up violations of constitutional rights by any or all of the following:

i.    By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

ii.    By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

iii.    By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the Los Angeles County jails; and

iv.    By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

s.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, LASD personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the LASD, or medical staff does not provide adverse information against a fellow officer, or member of the LASD or the medical staff;

26

**COMPLAINT FOR DAMAGES**

t.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

104.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY and LASD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and the LASD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and LASD, including SHERIFF LUNA:

a.    To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

b.    To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

c.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

d.    To cover up violations of constitutional rights by any or all of the following:

i.    By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

ii.    By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

iii.    By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false

**COMPLAINT FOR DAMAGES**

reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.   To allow, tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the COUNTY jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

105.   Defendant supervisors had knowledge of in adequacy of Supervision and deliberate indifference towards inmates' rights to be protected from harm at the Los Angeles County Jails and failed to take corrective action.

106.   Prior to John Grigorian's death, high-level COUNTY supervisors, including SHERIFF LUNA, knew or should have known of a history of years of notice of ongoing failure to routinely check in on inmates, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate training/supervision/control, the hiring of deputies in jails who exhibit deliberate indifference & reckless disregard to the safety of other inmates, subjection of violence in jails perpetrated by other inmates, and failure to take corrective measures,

**COMPLAINT FOR DAMAGES**

including separation of detainees from potentially violent or dangerous inmates, use of security cameras to monitor violence within jail cells, training deputies to monitor detainees and inmates and immediately respond to it, and failing to adequately control and discipline deputies involved in misconduct. The number of lawsuits against the COUNTY and throughout the state and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference to protective detainees from and inmates from unnecessary harm and their failure to take corrective action.

107. As a preamble, the COUNTY had notice of a slew of cases revealing constitutional violations of inmates' rights to be protected from harm. Due diligence would have revealed these breaches of constitutional mandates.

108. The Defendants' deliberate indifference towards pretrial detainees subject to inmate violence due to the above-referenced polices, customs and practices resulted in several inmate-on-inmate deaths since 2020:

    a. In 2020, Dan John Santiago, a 35-year-old male, was found dead in his jail cell due to multiple traumatic injuries and coronary artery disease after a physical altercation with another inmate occurred. Mr. Santiago was held in a chokehold and also sustained various injuries which led to his laceration, swollen eyelids with a broken blood vessel, and bleeding near the scalp.

    b. In 2020, Raul Antonio Barreto, a 32-year-old male, was found unresponsive in his four man cell after being assaulted. Mr. Barreto received blunt trauma to his head, neck, forearms, and elbows, and was also found with: various fractures, contusions, hemorrhages, and abrasions. Mr. Barreto had suffered from severe neck compression and the multiple blunt injuries which resulted in his death. Mr. Barreto was last seen alive at 9:30 on March 11, 2020, and deputies were not alerted as to Mr. Barreto being "down" until 12:30. When Mr. Baretto was last

**COMPLAINT FOR DAMAGES**

seen alive, subsequent checks had been performed where Mr. Baretto was seen laying on his bunk and was allegedly believed to have been sleeping.

c. In 2021, Destiny Ortega, a 32-year-old woman was found face down, in a pool of blood, in her cell. Ms. Ortega had suffered from blunt force trauma to the head from an unknown object, and sustained various internal and external injuries including: multiple lacerations, multiple abrasions, multiple hemorrhages, fractures, and multiple contusions, which led to her death. Ms. Ortega had also appeared to have past previous suicide attempts while she was in custody.

d. In 2022, Karl Wooden, a 48-year old male, was found dead after having suffered blunt head and neck trauma from being strangled by his cellmate. Mr. Wooden was in-custody at TTCF and was found with his cellmate having his knee around Mr. Wooden's chest, and both hands around Mr. Wooden's neck.

e. In 2022, Marco Antonio Arreguin, a 30-year-old male, was found dead in his cell due to an unknown cause of head trauma. Mr. Arreguin received an injury on about January 08, 2022, and was pronounced dead just eight (8) days later on January 16, 2022. Previously, the following day after Mr. Arreguin had been arrested on December 30, 2021, Mr. Arreguin woke up with swollen eyes and was noted to be stumbling around and hit his head. Mr. Arreguin's condition worsened on January 8, 2022 when he was punched in the face and neck by one of his cellmates after trying to feel around for his surroundings. After receiving a CT scan, it had been noted that Mr. Arreguin had bacteria spreading through the blood as well as inflammation of the membranes covering the brain. His condition then continued to worsen resulting in his death.

30

**COMPLAINT FOR DAMAGES**

Mr. Arreguin's manner of death was ultimately undetermined due to the cause and age of the head trauma being unknown.

f.  In 2022, Mario Gallegos, died after receiving a total of eleven (11) fatal stab wounds in the neck. At the time of his death, Mr. Gallegos was only 25 years old.

g.  In 2023, Masoud Rahmati, a 50-year-old male died after receiving blunt traumatic injuries from being struck repeatedly by three inmates while Mr. various traumatic injuries which led to his death, including: contusions, abrasions, and hemorrhages to various parts of the body such as the head and torso. Mr. Rahmati was repeatedly struck around 5:30 and deputies were not informed about the injured decedent until 9:00 when he was found unresponsive and breathing.

h.  In 2023, Andrew Balderrama was brutally choked and beaten by his cell mate, Vincent Tellez, while housed at TTCF. This attack caused Andrew Balderrama to suffer multiple severe injuries, compression with herniation, and anoxic brain damage, among other injuries. Following the attack, Andrew Balderrama was hospitalized for several days at the Los Angeles County Hospital but ultimately succumbed to his injuries and died on May 17, 2023.

109.  The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY custody, medical and mental health staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY, and LASD, including Defendant SHERIFF LUNA and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY, and LASD, and that such policymakers have direct knowledge of the fact that the death of John Grigorian was the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/LASD, and his rights to

31

**COMPLAINT FOR DAMAGES**

have access to medical care when suffering a medical emergency.  Notwithstanding this knowledge, the authorized policymakers within the COUNTY, LASD, and LACDHS have approved of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of John Grigorian. By so doing, the authorized policymakers within the COUNTY, and LASD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF LUNA and DOES 8 through 10, and other policy-making officers for the COUNTY, LASD, and LACDHS were and are aware of a pattern of misconduct and injury caused by COUNTY custody, medical and mental health staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody, medical and mental health staff and failed to institute new procedures and policy within the COUNTY, and LASD.

110. The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY, and LASD were a moving force and/or a proximate cause of the deprivations of decedent John Grigorian's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent John Grigorian to their wrongful conduct, depriving decedent John Grigorian of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent John Grigorian, Plaintiffs and others would be violated by their acts and/or omissions.

111. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY, and

**COMPLAINT FOR DAMAGES**

LASD, as described above, decedent John Grigorian suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and LASD.

## X.

## FIFTH CAUSE OF ACTION

**Supervisory Liability Causing Constitutional Violations,**

**(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF JOHN GRIGORIAN As Against Defendants**

**SHERIFF LUNA and DOES 7 through 10**

112.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

113.   At all material times, SHERIFF LUNA and DOES 8 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and LASD.

114.   Defendants SHERIFF LUNA and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 10, and other COUNTY and LASD personnel, with deliberate indifference to Plaintiffs', decedent John Grigorian's, and others' constitutional rights, which were thereby violated as described above.

115.   As supervisors, Defendants SHERIFF LUNA and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at TTCF and the rights to the serious medical and mental health needs of decedent John Grigorian. Each of these supervising Defendants either directed his or

33

**COMPLAINT FOR DAMAGES**

her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent John Grigorian of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent John Grigorian of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent John Grigorian's rights, and in fact did cause the violation of decedent John Grigorian's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent John Grigorian' rights.

116. The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and LASD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and LASD, including Defendants SHERIFF LUNA and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent John Grigorian's, and others' constitutional rights, which were thereby violated as described above.

117. The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY and LASD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and LASD, including Defendants SHERIFF LUNA and DOES 8 through 10.

118. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF LUNA and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent John Grigorian was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and his rights to his serious medical and mental health needs, as set forth above. Notwithstanding this knowledge, on information and belief,

34

**COMPLAINT FOR DAMAGES**

Defendants, SHERIFF LUNA and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of John Grigorian. By so doing, Defendants, SHERIFF LUNA and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants.

119. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF LUNA and DOES 8 through 10 and other policymaking officers for the COUNTY and LASD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and LASD custody, medical and mental health staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and LASD.

120. The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF LUNA and DOES 8 through 10 were a moving force and/or a proximate cause of the deprivations of decedent John Grigorian's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

121. Defendants subjected decedent John Grigorian to their wrongful conduct, depriving decedent John Grigorian of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent John Grigorian and others would be violated by their acts and/or omissions.

122. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF

**COMPLAINT FOR DAMAGES**

LUNA and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

**XI.**

**SIXTH CAUSE OF ACTION**

**Negligence – Wrongful Death**

**Plaintiff BLAKE GRIGORIAN As Against All Defendants**

123.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

124.   The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants, inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendants COUNTY and LASD are liable for injuries caused by the acts or employment. This cause of action is not alleging direct liability against Defendants COUNTY and LASD, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

125.   At all times, Defendants DOES 1 through 10 owed Plaintiff and decedent John Grigorian the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

126.   At all times, these Defendants owed Plaintiff and decedent John Grigorian the duty to act with reasonable care.

127.   These general duties of reasonable care and due care owed to Plaintiffs and decedent John Grigorian by these Defendants include but are not limited to the following specific obligations:

    a.    To properly treat, house, and warn others concerning dangerous inmates such as Morees Valdez;

    b.    To properly treat and house inmates such as John Grigorian;

**COMPLAINT FOR DAMAGES**

c.    To properly take precautions in housing and confining an inmate who is being attacked by another inmate;

d.    To house and confine inmates in a housing module, cell and facility free violence;

e.    To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

f.    To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical and mental health crisis with serious medical and mental health needs;

g.    To summon, or transport Decedent to necessary and appropriate emergency medical and mental health care;

h.    To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

i.    To refrain from abusing their authority granted them by law; and

j.    To refrain from violating Plaintiff's and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

128.   Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff and decedent John Grigorian.

129.   Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

130.   As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent John Grigorian sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

37

**COMPLAINT FOR DAMAGES**

# XII.

## SEVENTH CAUSE OF ACTION

### Negligence – Medical Malpractice

### Plaintiff Estate of JOHN GRIGORIAN As Against All Defendants

131. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

132. The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants inclusive, are liable for injuries caused by their acts or omissions to the entities, Defendants COUNTY and LASD are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendants COUNTY and LASD, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

133. Decedent John Grigorian was under the care and treatment of Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including TTCF, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when he suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and LASD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent John Grigorian to specialist medical care providers; negligently failed to provide physician care; negligently failed to provide psychiatry care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same

**COMPLAINT FOR DAMAGES**

locality as Defendants for the benefit of their patient and dependent pre-trial detainee John Grigorian.

134. Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent John Grigorian emergency medical and mental health care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent John Grigorian was provided.

135. As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

136. Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

## XIII.

## EIGHTH CAUSE OF ACTION

### Violation of California Government Code § 845.6

### Plaintiff ESTATE OF JOHN GRIGORIAN As Against All Defendants

137. Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

138. Defendants DOES 1 through 10 was in need of immediate medical care and treatment, and each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and LASD, knowing and/or having reason to know of decedent John Grigorian's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

COMPLAINT FOR DAMAGES

139.   In fact, it was more than evident on February 25, 2024, that John Grigorian's situation was dire and he needed immediate medical care. John Grigorian needed immediate care to address his life-threatening injuries following the brutal attack he was subjected to after being housed with a known violent inmate. Instead of providing the appropriate medical care, Defendants DOES 1 through 10, and each of them, failed to take reasonable actions to summons medical care.

140.   Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

141.   As a direct and proximate result of the aforementioned acts of these Defendants, decedent John Grigorian was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

## XIV.

## NINTH CAUSE OF ACTION

### Violation of California Civil Code § 52.1 (Tom Bane Act)

### Plaintiff ESTATE OF JOHN GRIGORIAN As Against All Defendants

142.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

143.   The present claim for relief is brought pursuant to Civil Code § 52.1, Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendants COUNTY and LASD are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct

40

COMPLAINT FOR DAMAGES

liability against Defendants COUNTY and LASD, only vicarious liability. See Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

144.    Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq*.

145.    By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent John Grigorian was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated John Grigorian's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

    a.    The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

    b.    The right for the familial association to be free from government interference as secured by the Fourteenth Amendment to the United States Constitution;

    c.    The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

    d.    The right to emergency medical and mental health care as required by California Government Code §845.6.

146.    Defendants' violations of decedent John Grigorian's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[1] Alternatively, separate from, and above and beyond, Defendants' attempted

---

[1] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at \*23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D.

**COMPLAINT FOR DAMAGES**

interference, interference with, and violation of John Grigorian's rights as described above, Defendants violated John Grigorian's rights by the following conduct constituting threat, intimidation, or coercion:

a. With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

b. With deliberate indifference to the safety of pretrial detainees;

c. With deliberate indifference to Decedent's serious medical and mental health needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

d. Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Los Angeles County jail detainees and inmates;

e. Requiring medical and mental health staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

f. Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

147. The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent John Grigorian's rights, or to any legitimate and lawful jail or law enforcement activity.

---

Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

**COMPLAINT FOR DAMAGES**

148.   Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

149.   Further, each Defendant violated decedent John Grigorian's rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

150.   Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

151.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent John Grigorian's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

**XV.**

**<u>TENTH CAUSE OF ACTION</u>**

**Violation of the Americans With Disability Act of 1990**

**(42 U.S.C 12101, *et seq*.)**

**Plaintiff ESTATE OF JOHN GRIGORIAN As Against**

**Defendants DOES 1 through 10**

152.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

153.   Pursuant to 42 U.S.C. § 12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

**COMPLAINT FOR DAMAGES**

154. Under Title II of the Americans with Disability Act, the COUNTY and LASD are required to make reasonable modifications to avoid discrimination on the basis of disability. The ADA sets an affirmative requirement to act appropriately with respect to prisoners with mental disabilities.

155. ADA creates an affirmative duty in some circumstances to provide special, preferred treatment, or "reasonable accommodation."

156. Facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.

157. Discrimination includes a defendant's failure to make reasonable accommodations to the needs of a disabled person based on his physical health. These accommodations include training on how to deal with the physically and mentally ill, specialized training of COUNTY staff, heightened level of medical care, and diligent surveillance.

158. Upon information and belief, Decedent John Grigorian was a disabled individual suffering from a mental disability, an impairment that substantially limited one or more major life activities. Decedent John Grigorian was a "qualified individual with a disability" for purposes of the Americans with Disabilities Act and the Rehabilitation Act.

159. The COUNTY and LASD are subject to the Americans with Disabilities Act and the Rehabilitation Act.

160. A person has a disability if he/she has a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or is regarded as having impairment.

161. Defendants COUNTY and LASD denied Decedent John Grigorian benefits of the services, programs or activities of the COUNTY and LASD because of his disability and subjected him to discrimination. More precisely, upon information and belief, Defendants COUNTY and LASD denied Decedent John Grigorian

**COMPLAINT FOR DAMAGES**

benefits by not allowing John Grigorian to engage in programs, services, and activities which would accommodate his mental disabilities.

162.    Defendant COUNTY and LASD failed to make reasonable accommodations to Decedent John Grigorian 's medical needs based on his mental health condition. The failure to provide critical medical services was a denial of the services program or activity based on his disability.

163.    Defendant COUNTY and LASD denied John Grigorian medical treatment by failing to provide John Grigorian with treatment for his mental health condition, thereby failing to accommodate Decedent John Grigorian 's disability, and denying him a service, benefit, or program.

164.    Defendants COUNTY and LASD were deliberately indifferent to Decedent John Grigorian's serious medical condition. Defendants COUNTY and LASD had actual knowledge of the substantial risk of harm to Decedent John Grigorian from his serious diagnosed condition and they responded with deliberate indifference by failing to communicate or document his condition; failing to place him in medical where he could be watched; and failing to provide him medical care when Decedent John Grigorian was in medical distress.

165.    The regulations promulgated by the Department of Justice to implement Part A of Title II of the ADA require each government entity to conduct a self-evaluation of its programs and services (or the lack thereof) related to persons with disabilities:

    i.    A public entity shall, within one year of the effective date of this part [that is, by January 26, 1993], evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications.

    ii.    A public entity shall provide an opportunity to interested persons, including individuals with disabilities or organizations representing

**COMPLAINT FOR DAMAGES**

individuals with disabilities, to participate in the self-evaluation process by submitting comments.

166. Defendants COUNTY and LASD failed to conduct any self-evaluation of procedures and training for its personnel about how to handle encounters with persons who have a physical illness or another disability.

167. Defendants COUNTY and LASD violated Decedent John Grigorian 's clearly established rights under the ADA with deliberate indifference.

168. The violation of Decedent John Grigorian's rights resulted from a COUNTY and LASD policy or custom adopted or maintained with deliberate indifference.

169. As a direct and proximate result of the Defendants COUNTY and LASD conduct as herein described, Decedent John Grigorian suffered damages in the amount to be determined at the time of trial.

## XVI.

## ELEVENTH CAUSE OF ACTION

**Violation of the Rehabilitation Act**

**(29 U.S.C. §704(a))**

**Plaintiff Estate of JOHN GRIGORIAN As Against**

**Defendants DOES 1 through 10**

170. Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

171. The Rehabilitation Act of 1973 ("Section 504") states in pertinent part, provides that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

172. Defendants COUNTY and LASD are programs that receive federal financial assistance as defined in 29 U.S.C. § 794(b).

46

**COMPLAINT FOR DAMAGES**

173.    Decedent John Grigorian was a "qualified individual with a disability" under the Rehabilitation Act.

174.    Defendants COUNTY and LASD violated the Rehabilitation Act by failing to make reasonable accommodations to the needs of Decedent John Grigorian, a disabled person. It was a reasonable accommodation to provide him with needed medical care.

175.    Employees of COUNTY and LASD were deliberately indifferent to Decedent John Grigorian 's serious medical condition. They failed to consider obvious symptoms of Decedent John Grigorian 's mental health condition.

176.    Instead of providing Decedent John Grigorian with adequate medical services and fair treatment, Defendants COUNTY and LASD refused to provide him with medical care as his condition deteriorated.

177.    Defendants COUNTY and LASD failed to accommodate Decedent John Grigorian with the services and programs available to patients with a medical condition. There were medical services readily available to Decedent John Grigorian , but Defendants COUNTY and LASD failed to properly house Decedent John Grigorian where Decedent John Grigorian could be monitored and humanely cared for.

178.    Defendants COUNTY and LASD knew of the substantial risk of harm to Decedent John Grigorian from his serious, diagnosed condition and they responded with deliberate indifference by failing to communicate or document his condition; failing to place him in medical where he could be watched; and failing to provide him medical care when Decedent John Grigorian was in medical distress.

179.    Defendants COUNTY and LASD violated the Rehabilitation Act by failing to conduct any self-evaluation of procedures and training for its personnel about how to handle communications with jails regarding patients who have a physical medical condition or another disability.

**COMPLAINT FOR DAMAGES**

180. Defendants COUNTY and LASD violated the Rehabilitation Act by failing to conduct any self-evaluation of procedures and training for its personnel about how to handle encounters with persons who have a physical medical condition or another disability.

181. As a direct and proximate result of the Defendants COUNTY and LASD conduct as herein described, Decedent John Grigorian suffered damages in the amount to be determined at the time of trial.

## XVI.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

    A.    Wrongful death of John Grigorian, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

    B.    Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

    C.    John Grigorian's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

    D.    Violation of John Grigorian's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

    E.    John Grigorian's loss of life, pursuant to federal civil rights law;

    F.    John Grigorian's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

    G.    General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

    H.    Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

48

COMPLAINT FOR DAMAGES

I. Punitive damages as to individual defendants;

J. Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K. A multiplier of damages, including treble damages, under the Tom Bane Act;

L. Penalties under the Tom Bane Act;

M. Interest; and

N. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law.

Dated: April 15, 2025  GASTÉLUM LAW, APC

By: _Denisse O. Gastélum_
Denisse O. Gastélum, Esq.
Selene Estrada-Villela, Esq.
Attorneys for Plaintiffs,
ESTATE OF JOHN GRIGORIAN, by and through successor in interest, BLAKE GRIGORIAN; BLAKE GRIGORIAN, individually

Dated: April 15, 2025  LAW OFFICES OF CHRISTIAN CONTRERAS
A Professional Law Corporation

By: _Christian Contreras_
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF JOHN GRIGORIAN, by and through successor in interest, BLAKE GRIGORIAN; BLAKE GRIGORIAN, individually

**COMPLAINT FOR DAMAGES**

## DEMAND FOR JURY TRIAL

Plaintiffs, ESTATE OF JOHN GRIGORIAN, by and through successor in interest, BLAKE GRIGORIAN; BLAKE GRIGORIAN, individually hereby make a demand for a jury trial in this action.

Dated: April 15, 2025                    GASTÉLUM LAW, APC

By: _Denisse O. Gastélum_
Denisse O. Gastélum, Esq.
Selene Estrada-Villela, Esq.
Attorneys for Plaintiffs,
ESTATE OF JOHN GRIGORIAN, by and through successor in interest, BLAKE GRIGORIAN; BLAKE GRIGORIAN, individually

Dated: April 15, 2025                    LAW OFFICES OF CHRISTIAN CONTRERAS
A Professional Law Corporation

By: _Christian Contreras_
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF JOHN GRIGORIAN, by and through successor in interest, BLAKE GRIGORIAN; BLAKE GRIGORIAN, individually

50

**COMPLAINT FOR DAMAGES**